# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ALLISON M., <br><br> **Plaintiff,** <br><br> v. <br><br> ANDREW SAUL, Commissioner of Social Security <br><br> **Defendant.** | Case No. 2:19-CV-2517-JAR |

## **MEMORANDUM AND ORDER**

This matter is before the Court for review of the final decision of Defendant Commissioner of Social Security denying Plaintiff's application for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff alleges that the Administrative Law Judge ("ALJ") erred in determining Plaintiff's residual functioning capacity ("RFC") because it is not supported by substantial evidence. Having reviewed the record, and as described below, the Court reverses the order of the Commissioner and remands the case.

**I.   Procedural History**

On October 20, 2016, Plaintiff protectively applied for a period of disability, disability insurance benefits, and supplemental social security income benefits. In both applications, she alleged a disability onset date of August 1, 2014. Plaintiff's applications were denied initially and upon reconsideration. She then asked for a hearing before an ALJ.

After a hearing on June 22, 2018, the ALJ issued a written decision on September 19, 2018, finding that Plaintiff was not disabled. Given the unfavorable result, Plaintiff requested reconsideration of the ALJ's decision from the Appeals Council. Plaintiff's request for review

was denied on June 28, 2019.¹ Accordingly, the ALJ's September 2018 decision became the final decision of the Commissioner.

Plaintiff filed a Complaint in the United States District Court for the District of Kansas. She seeks reversal of the ALJ's decision and the grant of those benefits. In the alternative, Plaintiff requests remand of the case for further consideration. Because Plaintiff has exhausted all administrative remedies available, this Court has jurisdiction to review the decision.

## II. Standard for Judicial Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether Defendant's decision is supported by substantial evidence in the record as a whole and whether Defendant applied the correct legal standards.² The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."³ In the course of its review, the court may not re-weigh the evidence or substitute its judgment for that of Defendant.⁴

## III. Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."⁵ An individual

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

---

¹The Appeals Council allowed Plaintiff to submit additional evidence. It found, however, that the evidence was neither time-relevant nor material and that it did not provide a basis for changing the ALJ's decision. *See* Doc. 9-1 at 6. Plaintiff does not challenge these findings.

²*See Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015).

³*White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (quoting *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

⁴*Id.*

⁵42 U.S.C. §§ 423(d)(1)(A), 416(i)(1)(a).

2

experience, engage in any other kind of substantial gainful work which exists in the national economy.[6]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[7] The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[8]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability, (2) whether the claimant has a severe, or combination of severe, impairments, and (3) whether the severity of those impairments meets or equals a designated list of impairments.[9] If the impairment does not meet or equal one of these designated impairments, the Commissioner must then determine the claimant's RFC, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from his impairments."[10]

Upon assessing the claimant's RFC, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform her past relevant work or whether she can generally perform other work that exists in the national economy, respectively.[11] The claimant bears the burden in steps one through four to prove a disability that prevents performance of his past relevant work.[12] The burden then shifts to the

---

[6]*Id.* § 423(d)(2)(A).

[7]*Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. §§ 404.1520(a), 416.920(a).

[8]*Barkley v. Astrue*, Case No. 09-1163-JTM, 2010 WL 3001753, at *2 (D. Kan. Jul. 28, 2010).

[9]*Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[10]*Barkley*, 2010 WL 3001753, at *2 (citing 20 C.F.R. § 416.920(e)); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

[11]*Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

[12]*Lax*, 489 F.3d at 1084.

Commissioner at step five to show that, despite the claimant's alleged impairments, the claimant could perform other work in the national economy.[13]

The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. She determined at step two that Plaintiff had the following severe impairments: fibromyalgia, bladder disorder, interstitial cystitis, affective disorder, anxiety disorder, and borderline personality disorder. At step three, the ALJ found that Plaintiff's impairments did not meet or equal the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. Continuing, she determined that Plaintiff had the RFC to

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). She can lift and/or carry 20 pounds occasionally and ten pounds frequently; can sit for six hours, and stand and/or walk for two hours, out of an eight-hour workday; can occasionally climb ladders, ropes, or scaffolds; can occasionally stoop, kneel, crouch, and crawl; should avoid hazards, such as unprotected heights and unprotected moving machinery; and is limited to performing simple, routine tasks.[14]

The ALJ determined at step four that Plaintiff was unable to perform any past relevant work. After considering Plaintiff's age, education, work experience, and RFC, she determined at step five that jobs existed in significant numbers in the national economy that Plaintiff could still perform. Thus, the ALJ concluded that Plaintiff had not been under a disability from August 1, 2014 through the date of her decision.

**IV.    Discussion**

Plaintiff challenges the ALJ's RFC determination by asserting that it is not supported by substantial evidence. Plaintiff first asserts that the ALJ's RFC as to Plaintiff's mental

---

[13] *Id.*

[14] Doc. 9-1 at 78.

impairments is unsupported by substantial evidence. Next, Plaintiff contends that the ALJ's RFC as to Plaintiff's physical limitations is not supported by substantial evidence.

### A.    Mental Impairments

Plaintiff asserts that the ALJ's RFC does not adequately account for Plaintiff's mental impairments and limitations. In addition, Plaintiff contends that the ALJ failed to include the ALJ's own findings of limitations in the RFC and instead simply stated that Plaintiff was limited to performing simple, routine tasks. Finally, Plaintiff argues that the RFC is unsupported by substantial evidence because there are no opinions from any physicians relating to how Plaintiff's mental impairments impact her ability to work and the ALJ relied on her own "medical expertise" in assessing Plaintiff's mental functional limitations.

In this case, the ALJ found that Plaintiff's affective disorder, anxiety disorder, and borderline personality disorder were severe mental impairments. And at step three of the ALJ's analysis, she noted that Plaintiff had "a moderate limitation in concentrating, persisting, or maintain[ing] pace."[15] Plaintiff's RFC, however, simply stated that Plaintiff was "limited to performing simple, routine tasks" and did not include any specific limitations regarding Plaintiff's mental impairments.[16]

The Commissioner argues that the ALJ did not err when she did not include specific limitations in Plaintiff's RFC. The Commissioner relies upon a Tenth Circuit case in which the circuit noted that the ALJ is not required to find any specific work-related limitations in an individual's RFC merely because the ALJ found mild or moderate limitations at a previous step

---

[15]Doc. 9-1 at 77.
[16]*Id.* at 78.

in the evaluation process.[17]  Although the Court recognizes the Tenth Circuit's finding in *Bales*, the Tenth Circuit has also found in at least two other cases that a limitation to "unskilled work" may not adequately encompass an individual's moderate mental impairments.[18]  The District of Colorado has also concluded that "a limitation to unskilled or simple and routine work does not account for a claimant's limitations in concentration, persistence, and pace."[19]  Here, the RFC was broad and simply stated that Plaintiff was limited to performing simple, routine tasks and does not take into account Plaintiff's moderate limitations in concentration, persistence, and pace that the ALJ determined that Plaintiff suffered from.  Thus, the RFC does not appear to be an adequate assessment of Plaintiff's mental limitations.

Furthermore, the failure to set forth specific limitations related to Plaintiff's mental impairments is exacerbated by two facts.  First, the ALJ's RFC does not include any of her own findings regarding Plaintiff's mild mental limitations.[20]  As noted above, the ALJ's RFC was broad and vague and simply stated that Plaintiff was limited to performing simple and routine tasks.

Next, there were no mental health opinions in the record as to how Plaintiff's mental impairments impacted her ability to perform work-related activities that the ALJ could rely upon.

---

[17]*See Bales v. Colvin*, 576 F. App'x 792, 798 (10th Cir. 2014) (noting that a finding of moderate limitations in concentration, persistence, or pace at step three does not necessarily equate to a work-related limitation for purposes of the RFC).

[18]*See Jaramillo v. Colvin*, 576 F. App'x 870, 876–77 (10th Cir. 2014) (noting that a limitation to "unskilled work" may not adequately encompass moderate mental impairments); *Wiederholt v Barnhart*, 121 F. App'x 833, 839 (10th Cir. 2005) (noting that in the context of giving a hypothetical to the vocational expert using the relatively broad and unspecified description of "simple" or "unskilled" does not adequately incorporate additional, more specific mental impairments); *see also Badar v. Colvin*, No. 15-cv-0180, 2015 WL 6774210, at *4 (D. Colo. Nov. 6, 2015) (noting that the Tenth Circuit's opinion in *Bales* is contrary to its opinions in *Jaramillo* and *Wiederholt*).

[19]*Badar*, 2015 WL 6774210, at *4 (noting cases from the Third, Fourth, Seventh, Eighth, and Eleventh circuits "have explicitly held in published opinions that a limitation to unskilled or simple and routine work does not account for a claimant's limitations in concentration, persistence, and pace.") (citations omitted).

[20]The Commissioner does not respond to this argument.

The Commissioner concedes this fact but claims that the record was sufficiently developed because it contained over 100 pages of mental health treatment notes. None of these notes, however, give an opinion as to how Plaintiff's mental impairments would have impacted her functional limitations.

Although the ALJ is responsible for formulating an individual's RFC, the ALJ must not "interpose [her] own 'medical expertise' over that of a physician."[21] The ALJ determined that Plaintiff had three severe mental impairments—affective disorder, anxiety disorder, and borderline personality disorder. Yet, there was no opinion by any physician as to the effect of Plaintiff's mental limitations, or the medication that she was taking for those impairments, on her mental capacity. "Where there is evidence of a mental impairment, the Commissioner of Social Security is directed to make 'every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.'"[22] In addition, if the ALJ completes the mental health assessment without assistance, the determination must be supported by substantial evidence.[23] Here, there is no medical opinion in the record regarding Plaintiff's mental health limitations and their impact on her functioning. Furthermore, the ALJ determined that Plaintiff had moderate difficulties in concentration, persistence, and pace but those difficulties were not incorporated into Plaintiff's RFC. In sum, it is unclear how the ALJ evaluated the medical evidence regarding Plaintiff's mental impairments, and certain limitations were not reflected in Plaintiff's RFC.

---

[21] *Kemp v. Bowen*, 816 F.2d 1469, 1476 (10th Cir. 1987).

[22] *Branstetter v. Colvin*, No. 13-CV-1275-DDC, 2014 WL 3700976, at *5 (D. Kan. July 25, 2014) (citing 42 U.S.C. § 421(h)); *see also J.H. v. Berryhill*, No. 18-CV-2241-JWB, 2019 WL 2250217, at *5 (D. Kan. May 24, 2019) (noting that the ALJ has a duty to develop the record as to material issues such as a plaintiff's mental health limitations).

[23] *Berryhill*, 2019 WL 2250217, at *5 (citations omitted).

Thus, the Court cannot find that the ALJ's RFC assessment regarding Plaintiff's mental functional capacity was supported by substantial evidence. Upon remand, the record should be fully developed as to Plaintiff's mental impairments, the effect of those impairments, and their impact on Plaintiff's RFC.

### B.  Physical Limitations

Plaintiff asserts that the ALJ erred in formulating the physical limitations in her RFC. Plaintiff also contends that the ALJ did not adequately discuss or appropriately consider the regulatory factors in evaluating Plaintiff's treating physician's opinions. Thus, Plaintiff asserts that the RFC is flawed and unsupported by substantial evidence.

In this case, the ALJ considered six medical opinions. She rejected most of the medical opinions in the record and only afforded "some weight" to one of Plaintiff's treating physician's opinions. Specifically, she gave little weight to the four non-examining state consultants because they opined that they had insufficient evidence to assess Plaintiff's allegations and the majority of the medical evidence was added at the hearing level. The ALJ gave "some weight" to Plaintiff's treating physician, Dr. Danelle Perry, and gave "little weight" to Dr. Andrew Morris's opinion, another treating physician. Thus, the ALJ was left with very few medical opinions to consider in formulating her RFC. As already noted, the RFC must be supported by substantial evidence.[24]

Under the version of the regulations applicable to Plaintiff's claim, the ALJ must consider all the medical opinions in the record and discuss the weight assigned to each opinion.[25]

---

[24] *Hamlin v. Barnhart*, 365 F.3d 1208, 1224 (10th Cir. 2004).

[25] *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (citation omitted); *see also* 20 C.F.R. §§ 404.1527, 416.927.  Different guidelines for weighing evidence now apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c, 416.920c; *see also McGregor v. Saul*, No. CIV-19-496-SM, 2019 WL 7116110, at *3 (W.D. Okla. Dec. 23, 2019) (noting that "[u]nder the revised regulations, the ALJ gives no specific evidentiary weight to any medical opinions." (internal quotation marks and citations omitted)); *Bills v. Comm'r, SSA*, 748 F. App'x 835,

To determine the exact weight to assign a treating source's opinion, the ALJ must follow a two-step inquiry.[26] At the first step, the ALJ must decide whether to afford the opinion controlling weight.[27] The ALJ will give controlling weight to a treating source opinion about the nature and severity of impairment only if the opinion is: (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) consistent with other substantial evidence in claimant's case record.[28] An opinion that is deficient in either support or consistency with other evidence is not entitled to controlling weight.[29]

If the treating source opinion is not given controlling weight, the inquiry does not end.[30] A treating source opinion is still entitled to deference and must be evaluated according to the factors provided in 20 C.F.R. § 404.1527.[31] These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the [source's] opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the [source] is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[32]

Though the ALJ is not required to discuss all six of these regulatory factors,[33] the ALJ must "give good reasons, tied to the factors specified in the cited regulations . . . for the weight

---

838 n.1 (10th Cir. 2018) (noting the revised regulations applicable to claims filed on or after March 27, 2017). Plaintiff's claim was filed in 2016 and thus the Court's review is guided by the previous regulations and case law.

[26]*Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

[27]*Id.*

[28]20 C.F.R. § 404.1527(c).

[29]*Krauser*, 638 F.3d at 1330.

[30]*Id.*

[31]*Id.* at 1330–31.

[32]*Id.* at 1331; *see also* 20 C.F.R. § 404.1527(c)(1)–(6).

[33]*Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

assigned" a treating source opinion.[34]  This analysis must be "sufficiently specific to make clear to any subsequent reviewers the weight [the ALJ] gave to the treating source's medical opinion and the reason for that weight."[35]  And if the ALJ rejects a treating source's opinion, she "must articulate specific, legitimate reasons for [her] decision."[36]

Here, controlling weight was not given to Plaintiff's two treating physician's opinions (Perry and Morris).  Indeed, little deference was given to these opinions and little discussion as to why so little weight was given.  With regard to Perry, she opined that Plaintiff could lift/carry ten pounds occasionally but never more so; was limited in repetitive reaching, handling, or fingering and could only use her right and left hands for grasping, turning, and twisting objects ten percent of the day and could only use her arms for reaching 50 percent of the day; could stand and/or walk for two hours and sit for four hours during an eight-hour workday; would need four of five ten-minute breaks throughout the day; and would miss work approximately three or four days a month.[37]  The ALJ only incorporated the stand/walk limitation of two hours in Plaintiff's RFC.  The ALJ rejected the rest of Perry's opinion regarding Plaintiff's limitations.

In discounting most of Perry's opinion, the ALJ determined that Perry's opinion was not supported by the medical evidence of record.  The ALJ cited to Perry's medical examinations for support that a majority of Plaintiff's visits indicated normal findings.  Yet, as Plaintiff points out, several of these examinations that the ALJ cited to for normal findings did not relate to Plaintiff's impairments.  For example, one medical examination that "yielded normal findings"

---

[34]*Krauser*, 638 F.3d at 1330 (citation omitted).

[35]*Id.* at 1331 (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004)).

[36]*Cowan v. Astrue*, 552 F.3d 1182, 1188 (10th Cir. 2008) (citation omitted).

[37]Doc. 9-1 at 609–10.

was a scheduled annual well woman exam,[38] and another visit was Plaintiff's visit for a sore throat, ear pain, and diarrhea.[39]

Furthermore, in only giving "some" weight to Perry's opinion, the ALJ's opinion does not appear to address the required regulatory factors for assigning such weight to the physician's opinion. Specifically, the ALJ does not note the length of the treatment relationship and frequency of Perry's examinations or the nature and extent of the treatment relationship. And although the ALJ appears to cite to two regulatory factors – whether Perry's opinion was supported by relevant evidence and whether her opinion was inconsistent with the record as a whole – the Court cannot find that substantial evidence supports the ALJ's statement on these matters. As noted above, the ALJ's finding that Perry's opinion was not reasonably supported because medical evidence yielded "normal findings" included citations to medical evidence and records in which Plaintiff presented for an annual exam and for a specific complaint of a sore throat. These exams are not related to Plaintiff's impairments for which she seeks disability or for which the ALJ found Plaintiff to be suffering.

In addition, with regard to the ALJ's statement that Perry did not identify her clinical findings to support her conclusions of fibromyalgia and interstitial cystitis, the Court notes that the ALJ already recognized these impairments as severe. Furthermore, the only other medical opinion of record, from Moore (also a treating physician), appears to be consistent with Perry's because he stated that he treated Plaintiff in excess of three years for interstitial cystitis and that Plaintiff would go through periods of flare-ups.[40] Although the ALJ is not required to formally

---

[38] *Id.* at 466–70.

[39] *Id.* at 456–61. The Court only notes a few of these "yielded normal findings" that were unrelated to Plaintiff's impairments.

[40] *Id.* at 881. Documentation and medical evidence regarding Plaintiff's interstitial cystitis was also included. *Id.* at 430–43; 878–83.

and exhaustively review all the factors concerning the weight given to a treating physician's medical opinion, the ALJ's opinion should provide for meaningful review. Here, it does not. Thus, the Court finds that the ALJ's RFC assessment as to Plaintiff's physical impairments is not supported by the record.

## V.     Conclusion

In sum, it does not appear that there was substantial evidence in the record from which the ALJ could base her findings and conclusion as to Plaintiff's RFC. Plaintiff requests that the Court reverse the decision with directions to the Commissioner for an immediate award of disability insurance benefits. In the alternative, Plaintiff requests remand.

In some cases, an immediate award of benefits is appropriate.[41] However, "remand is more appropriate when the administrative record has not been fully developed, or where the ALJ makes minimal findings that are not supported by adequate evaluation of the evidence in the record."[42] Here, the Court cannot conclusively determine that the ALJ erred in her RFC assessment. Rather, the Court finds that the evidence and reasons set forth in the ALJ's opinion do not allow for meaningful review of the RFC. Therefore, the Court concludes that it is more appropriate to reverse and remand. Upon remand, the ALJ should adequately discuss the evidence relating to Plaintiff's RFC, particularly with regard to Plaintiff's mental functional limitations and Plaintiff's treating physician findings as related to her physical functional limitations. If necessary, the record should be more developed to determine Plaintiff's mental capacity limitations.

---

[41]*See Williams v. Bowen*, 844 F.2d 748, 760 (10th Cir. 1988).

[42]*Higgins v. Barnhart*, 294 F. Supp. 2d 1206, 1215 (D. Kan. 2003) (citing *Taylor v. Callahan*, 969 F. Supp. 664, 673 (D. Kan. 1997)).

**IT IS THEREFORE ORDERED** that the judgment of the Commissioner is **reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g)** for further proceedings consistent with this memorandum and order.

**IT IS SO ORDERED.**

Dated: May 1, 2020

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE
